[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 16, 2001
THOMAS K. KAHN
CLERK

_____

No. 98-4909
_____

D.C. Docket No. 96-06008-CR-EBD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,
Cross-Appellant,

versus

THOMAS FARESE, a.k.a. Tom Mix,
a.k.a. Tommy, etc.,

Defendant-Appellant,
Cross-Appellee.

_____

No. 98-5004
_____

D.C. Docket No. 96-06008-CR-EBD

UNITED STATES OF AMERICA,

Plaintiff-Appellant-
Cross-Appellee,

versus

FRANK DEROSA, a.k.a. Old Man,

Defendant-Appellee-
Cross-Appellant.

_____

Appeals from the United States District Court for the
Southern District of Florida
_____

**(April 16, 2001)**

Before ANDERSON, Chief Judge, CARNES, Circuit Judge, and NANGLE[*],
District Judge.

CARNES, Circuit Judge:

Appellants Thomas Farese and Frank DeRosa pleaded guilty to one count of

conspiring to participate in the affairs of an enterprise through a pattern of

racketeering.[1] The district court sentenced them pursuant to U.S.S.G. § 2S1.1, the

provision applicable to the offense of money laundering. They contend the district

court erred by sentencing them under that guideline provision because they did not

commit the crime of money laundering, and Farese also contends the court should

not have enhanced his sentence based on his role as an organizer or leader of the

racketeering conspiracy. The government cross-appeals, arguing that the district

court erred in calculating the amount of laundered funds that affected interstate

_____

[*] Honorable John F. Nangle, U.S. District Judge for the Eastern District of Missouri,
sitting by designation.

[1] One of the defendants who also appealed this case, William Cresta, died during the
pendency of his appeal. A litigant's death renders his criminal appeal moot. See United States
v. Schumann, 861 F.2d 1234, 1236 (11th Cir. 1988) ("It is a well-settled principle of law that all
criminal proceedings abate ab initio when the defendant dies pending direct appeal of his
criminal conviction."). For that reason, we dismissed Cresta's appeal in a separate order.

2

commerce. For the reasons set forth below, we vacate the appellants' sentences and remand this case to the district court for resentencing consistent with this opinion.

## I. BACKGROUND

In April of 1995 the United States Drug Enforcement Agency initiated an investigation based upon information that Frank DeRosa was interested in laundering money for a fee. Two confidential DEA informants posing as cocaine distributors approached DeRosa and told him that they had large sums of United States currency in small denominations which had been collected from the sale of crack cocaine. The informants explained to DeRosa that they needed to convert the currency into large-denomination bills in order to more easily conceal it for transport out of the country. For a commission, DeRosa agreed to provide them with large-denomination bills.

DeRosa exchanged currency with the informants on twelve occasions between April of 1995 and November of 1995. On each occasion DeRosa delivered envelopes containing large-denomination bills to the informants in exchange for an equivalent amount of cash in small-denomination bills plus a commission. The total value of the cash that DeRosa received from the informants

3

for exchange was $1,062,000, and the total value of the commission received by the appellants and others for their services was $95,080.

On January 16, 1996, a federal grand jury returned a 25-count indictment, Count I of which charged Farese, DeRosa, and others with conspiring to participate in the affairs of an enterprise through a pattern of racketeering, in violation of 18 U.S.C. § 1962. The objects of the racketeering activity were alleged to be multiple acts of money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B) and (h); obstruction of justice, in violation of 18 U.S.C. §§ 1503 and 1512; and mail fraud, in violation of 18 U.S.C. § 1341. Farese and DeRosa pleaded guilty to that count of the indictment, except insofar as it charged them with the object offense of obstruction of justice.[2]

In a motion Farese had filed before pleading guilty, he argued that he did not commit the crime of money laundering, both because he had not attempted to "conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity," as required by 18 U.S.C. § 1956(a)(3)(B); and also because he had not been involved in a financial transaction that affected interstate commerce, as required by section 1956(c)(4). A

---

[2] The appellants' plea agreements and colloquy did not mention the object offense of obstruction of justice, even though it is charged in Count I. The parties have proceeded as though the obstruction of justice object offense was not part of the guilty plea and adjudication of guilt, and so do we.

4

magistrate judge recommended that motion be denied.  The record, however, does not indicate that the district court ever ruled on the motion.

Eleven days after the magistrate judge filed the recommendation relating to Farese's motion, the appellants pleaded guilty to Count I of the indictment insofar as it charged them with the object offenses of money laundering and mail fraud. In Farese's plea agreement, however, he reserved the right to contest at sentencing the issues raised in his earlier motion regarding the object offense of money laundering; and he did contest those issues at sentencing.  The district court expressly allowed him to proceed in that fashion, and the government does not deny that Farese preserved the money laundering issues for appeal.[3]  Those issues do not affect the adjudication of guilt, but only the sentence imposed.

The district court conducted a three-day sentence hearing during which the money laundering issues were given a good airing.  Near the end of the hearing the

---

[3] The government points out that DeRosa's plea agreement, unlike the plea agreement signed by Farese, did not reserve the right to contest any issues at sentencing.  Normally, a litigant's failure to reserve the right to contest sentencing issues in his plea agreement precludes him from challenging the district court's decision to sentence him under a particular guideline provision.  See Fed. R. Crim. P. 11(a)(2); United States v. Finnigin, 113 F.3d 1182, 1183 (10th Cir. 1997); United States v.Arzate-Nunez, 18 F.3d 730, 737 (9th Cir. 1994) ("A defendant who enters a conditional guilty plea pursuant to Fed. R. Crim. P. 11(a)(2) must state in writing any issues he wishes to reserve for appeal and may lose the right to appeal issues not so expressly reserved.") (citations omitted).  However, the record in this case reveals that, in spite of his failure to reserve rights in his plea agreement, the district court permitted DeRosa to reserve the right to contest at sentencing the issues raised in Farese's motion regarding the money laundering offense at the appellants' change-of-plea hearing, and permitted DeRosa to preserve those issues for appeal.

5

district court stated that the government's burden of persuasion for showing that money laundering was the object of the racketeering conspiracy was by a preponderance of the evidence. The court concluded that the government had satisfied that burden, and it sentenced Farese and DeRosa under the money laundering guideline, U.S.S.G. § 2S1.1. The court then enhanced Farese's offense level by four pursuant to U.S.S.G. § 3B1.1(a), based on his role as an organizer or leader of the money laundering and mail fraud offenses. The court declined to enhance either Farese or DeRosa's offense level pursuant to U.S.S.G. § 2S1.1(b)(2), though, because the court concluded the government had not shown that the amount of funds which affected interstate commerce exceeded $100,000.

The district court calculated Farese's total offense level to be 24, and sentenced him to 72 months of imprisonment followed by a 3-year term of supervised release. The court calculated DeRosa's total offense level to be 20, and sentenced him to 33 months of imprisonment followed by a 2-year term of supervised release. Farese and DeRosa timely appealed their sentences, and the government cross-appealed.

## II. DISCUSSION

While conceding their guilt of the racketeering conspiracy to which they pleaded guilty, the appellants contend they did not commit the crime of money

laundering and, therefore, that the district court erred in imposing sentences based on money laundering being the object of the conspiracy. The determination of the object offense is essential. If the object offense was money laundering, as the district court found, then a higher base offense level applies than if mail fraud were the only object offense. Section 2E1.1 of the sentencing guidelines sets the base offense level for a violation of the racketeering statute, 18 U.S.C. § 1962, at the greater of 19 or the offense level applicable to the underlying racketeering activity. See U.S.S.G. § 2E1.1(a). The base offense level applicable to money laundering is 20, id. § 2S1.1(a)(2), while the base offense level for mail fraud is 6, id. § 2F1.1(a).

The appellants contend that the district court erred as a matter of law in imposing sentences based on money laundering being the object of the racketeering conspiracy, for two reasons. First, they argue that the type of transaction they engaged in – swapping large-denomination bills for small-denomination bills – cannot constitute money laundering because that kind of transaction does not "create the appearance of legitimate wealth." Their position is that exchanging cash for cash does not conceal or disguise illicit proceeds as required by section 1956(a)(3)(B) of the money laundering statute. We disagree.

7

Section 1956(a)(3)(B) criminalizes financial transactions conducted with the intent "to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of [an] unlawful activity ...." 18 U.S.C. § 1956(a)(3)(B). Exchanging large-denomination bills for small-denomination bills facilitates concealment of the "location" of funds because one large-denomination bill is easier to hide than several small-denomination bills of the same total value. See United States v. Barber, 80 F.3d 964, 970 (4th Cir. 1996) (recounting expert's testimony that withdrawing large-denomination bills from a bank can facilitate concealment because "one large bill is easier to conceal than several small ones"); United States v. Coiro, 922 F.2d 1008, 1011, 1016 (2d Cir. 1991). Indeed, the informants explained to DeRosa that the purpose of the exchanges was to facilitate concealment. They told him they needed to convert their drug money into larger bills in order to better conceal it for transport out of the country. Reducing the volume of paper currency is one way to help "conceal or disguise" property within the meaning of the statute. See 18 U.S.C. § 1956(a)(3)(B).

The second reason the appellants contend the district court erred in imposing sentences based on money laundering being the object of the racketeering conspiracy involves the standard of proof applied by the court. The district court applied a preponderance of the evidence standard in determining that the object of

8

the racketeering conspiracy was money laundering. The appellants argue that, under this Court's decision in United States v. Ross, 131 F.3d 970 (11th Cir. 1997), the standard the district court should have applied is proof beyond a reasonable doubt. Their position is that because of the district court's failure to apply that standard of proof, we should vacate their sentences and remand this case to allow the district court to apply the beyond a reasonable doubt standard. We agree.

It will not always be clear what the underlying racketeering activity is under U.S.S.G. § 2E1.1(a) for the purpose of calculating the defendant's offense level, because the jury's verdict or the guilty plea may not specify which of the offenses listed in the indictment was the object of the conspiracy. In these circumstances section 1B1.2(d) instructs courts how to select the appropriate offense level. That section provides: "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." U.S.S.G. § 1B1.2(d). However, the commentary to section 1B1.2(d) goes on to caution that:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact,

9

would convict the defendant of conspiring to commit that object offense.

Id. § 1B1.2 commentary at para. 4. We have interpreted the words "were it sitting as a trier of fact" in this commentary to mean that the district court must find beyond a reasonable doubt that the defendant conspired to commit a particular object offense before the court can sentence the defendant on the basis of that offense. See Ross, 131 F.3d at 990 (citing United States v. McKinley, 995 F.2d 1020, 1026 (11th Cir. 1993)).

The appellants' guilty pleas do not establish whether money laundering or mail fraud was the object of the racketeering conspiracy because, although they pleaded guilty to Count I of the indictment insofar as it charged them with those object offenses, Farese expressly reserved the right to contest at sentencing the issue of whether he committed the crime of money laundering, and preserved that issue for appeal. And the district court permitted DeRosa to ride along on that same reservation. As a result, U.S.S.G. § 1B1.2(d), as interpreted in our Ross decision, means the district court could find that the object of the racketeering conspiracy was money laundering, and sentence the appellants under the money laundering guideline, only if it was convinced beyond a reasonable doubt that they committed that offense. See United States v. DiGiorgio, 193 F.3d 1175, 1177-78 (11th Cir. 1999); Ross, 131 F.3d at 994; McKinley, 995 F.2d at 1026; United

10

States v. Coscarelli, 105 F.3d 984, 988-89 (5th Cir.), vacated by, 111 F.3d 376, and rev'd on other grounds by, 149 F.3d 342 (1998) (dictum) (section 1B1.2(d) applies where defendant's guilty plea does not establish which offense is object of conspiracy).  The district court applied a preponderance of the evidence standard, and that was error.

The district court's failure to apply the proper standard of proof at sentencing compels us to vacate the appellants' sentences and remand this case to the district court for resentencing.  See United States v. Hernandez, 141 F.3d 1042, 1052 (11th Cir. 1998) ("It is emphatically not within the province of an appellate court to reweigh the evidence and the credibility of the witnesses at trial."); Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1559 (11th Cir. 1988).  On remand, the district court should determine whether the government has satisfied its burden of showing, beyond a reasonable doubt, that the object offense committed by the appellants was money laundering.  In making that determination, the court should enter specific findings on the intent and interstate commerce issues raised by Farese in his motion relating to the money laundering offense – issues that both Farese and DeRosa reserved the right to contest at sentencing.

Given our decision to vacate the sentences on the ground relating to money laundering being the object of the racketeering conspiracy, we decline to address

11

the appellants' remaining arguments, and the issue raised in the government's cross-appeal. If, upon remand, the parties wish to press those matters before the district court, they are free to do so; we imply no view on them.

## III. CONCLUSION

The appellants' sentences are VACATED and this case is REMANDED to the district court for resentencing consistent with this opinion.