**UNITED STATES of America,**
**Appellee,**

v.

**Arnett C. SMITH, Appellant.**

No. 00–3129.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 2001.

Decided Oct. 30, 2001.

Charles B. Klein argued the cause for appellant. With him on the briefs were Richard A. Hibey and Nathaniel H. Speights.

Jeffrey W. Bellin, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Kenneth L. Wainstein, U.S. Attorney, John R. Fisher and Mark H. Dubester, Assistant U.S. Attorneys.

Before: GINSBURG, Chief Judge, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Arnett C. Smith appeals his conviction under 18 U.S.C. § 208(a) and § 371 for conflict of interest by an officer or employee of the District of Columbia and conspiracy. Smith, formerly the District official responsible for referring mentally disabled patients to day treatment programs, was convicted after engaging in dubious financial dealings with the owner of one of the facilities to which he had sent patients. The District Court sentenced Smith to 46 months in prison, after fixing his total offense level under the Sentencing Guidelines at 22, which included a three-level upward departure based on uncharged fraudulent conduct.

On appeal, Smith challenges both his conviction and his resulting sentence. He claims first that he was wrongly convicted for violating § 208(a), advancing the novel theory that this statute should be read to exclude persons who are employed at his government salary level. We reject this argument, which borders on the frivolous. Smith's attacks on his sentence, however, have considerable merit. Specifically, Smith asserts that the District Court applied the wrong burden of proof in determining the predicate offense for his conspiracy conviction. He is correct. Because this error was plain, we are compelled to vacate and remand Smith's sentence. In addition, we have concluded that the findings and calculations that the District Court used to support its upward departure are materially flawed. On remand, the trial court must therefore reconsider its decision to depart.

## I. BACKGROUND

Smith's convictions grew out of a series of questionable transactions that he entered between 1993 and 1995 with Denise Braxtonbrown–Smith (no relation), the owner of Psychological Development Associates ("PDA"). PDA offered treatment services to the mentally disabled. One of Smith's most important responsibilities as the Chief of the Day Programs Branch of the District of Columbia's Mental Retardation and Developmentally Disabled Administration ("MRDDA") was referring pa-

tients to treatment centers such as those provided by PDA. In 1994, Smith helped PDA get one of its facilities, Better Treatment Center ("BTC") accepted into Medicaid, thus making it eligible to receive reimbursements for patients sent by MRDDA. Quickly, MRDDA referrals became a primary source of BTC's income. But all was not rosy at BTC. On May 31, 1994, Smith received a negative report on the conditions there from Jacquelin Smith (also no relation), a MRDDA resource specialist. Ms. Smith had visited the facility a week earlier and had concluded in her report that the program was "not meeting the individual needs of the customers as specified in their Individual Habitation Plan." Government's Record Material ("GRM") A–2. Even after receiving this report, however, Mr. Smith continued to refer patients to BTC.

During this same period, appellant involved himself with Braxtonbrown–Smith and her company in a different capacity. First, in early 1995, he made three separate loans to PDA, which, despite the now-steady stream of MRDDA referrals, had found itself in financial difficulties. The first of these loans was for $14,900; one week later PDA (on Braxtonbrown–Smith's direct order) repaid Smith $18,500. The next two totaled $28,000, for which PDA wrote Smith a $39,000 check less than a week after receiving the final loan. Second, Smith entered into a complicated real estate deal in which he purchased, at a significantly discounted price, a piece of property that Braxtonbrown–Smith had been renting and had a standing option to buy. In the fall of 1994, Braxtonbrown–Smith told the property's elderly owner, Earnestine Keaton, that although she could not afford to exercise her option (then worth $85,000) she had a friend (Mr. Smith) who could. On October 18, Smith signed a contract with Keaton to buy the land, 501 Columbia Road in Northwest

Washington, for $65,000. Though the contract price was low, Keaton testified that Braxtonbrown–Smith had told her that she would "make the rest of it up in the future." Tr. 5/5/2000 at 10. In the course of this transaction, Keaton was not represented by counsel; Braxtonbrown–Smith had assured her that she did not need a lawyer, saying "we can trust each other." See id. at 12. However, while Smith eventually paid Keaton the entire $65,000 he owed her under the contract, she received no more money from Braxtonbrown–Smith.

Soon after purchasing the house, Smith sold it to his childhood friend, Terry Reid, for a net price of $102,000. In the mortgage application that he completed to facilitate this sale, Reid falsely stated (allegedly at Smith's urging) that he himself would be moving into the Columbia Road property. He went so far as to submit a fake lease, prepared by Smith, in which Reid purported to rent his own house to Smith's mother, whom Reid had never even met. Actually, however, Braxtonbrown–Smith continued to occupy the property, and to pay rent to its new owners, Reid and Smith. For, while Reid did become the record owner, he and Smith had drawn up a separate agreement by which they would own the property as tenants-in-common. See id. at 78. Accordingly, the two men shared Braxtonbrown's $1300 a month rental payments, which more than covered their $1100 monthly mortgage, and left them with a $200 monthly profit. This arrangement continued until roughly 1997 or 1998, when Braxtonbrown–Smith simply walked away from her lease. See id. at 80.

Based on these events, Smith was indicted in November of 1999 on six counts of conflict of interest, paying and/or receiving illegal gratuities, and conspiracy, in violation of 18 U.S.C. §§ 208(a), 201(c), and 371, respectively. The Government's theory

was that Smith had steered clients toward BTC, despite knowing that its care was substandard, in exchange for valuable concessions from Braxtonbrown–Smith (the favorable "loans" and the opportunity to purchase the Columbia Road property at a bargain). Smith countered that, while he had referred clients toward BTC, he had no agreement, overt or tacit, with Braxtonbrown–Smith to swap such referrals for anything of value. In the end, Smith was convicted on two counts of conflict of interest and on one count of conspiracy. As to the three substantive illegal gratuities counts, however, the jury deadlocked, so no verdict was reached. Moreover, while Smith's indictment had identified three possible predicate offenses for the conspiracy charge — conflict of interest, payment of illegal gratuities, and receipt of illegal gratuities — the jury did not indicate on which of these its conspiracy conviction was based.

At sentencing, the District Court fixed Smith's total offense level at 22. The court began with a base level of 7 for the conspiracy count, the level for the substantive offense of giving or receiving an illegal gratuity. See U.S. SENTENCING GUIDELINES MANUAL § 2C1.2 [hereinafter U.S.S.G.]. In selecting this base, the court noted that the jury had failed to convict on the gratuities charges, but proceeded to determine, by a preponderance of the evidence, that defendant was guilty of conspiracy to receive and/or pay illegal gratuities. See Memorandum Opinion and Order at 4 (D.D.C. Nov. 6, 2000) ("Sentencing Order"), reprinted in Joint Appendix ("J.A.") tab 10. The court then supplemented this base level by adding two levels for additional gratuities, see U.S.S.G. § 2C1.2(b)(1), and four more for the value of the gratuities, see id. at § 2C1.2(b)(2)(A), which the court set at $29,600. On top of this, the court then added a two-level "vulnerable victim" en-

hancement, see id. at § 3A1.1(b)(1), a two-level "role in the offense" enhancement, see id. at § 3B1.1(c), and a two-level enhancement for obstruction of justice by perjury, see id. at § 3C1.1. Finally, the court departed upward three levels for relevant, but uncharged, aggravating conduct, specifically Smith's alleged deceptions of Ms. Keaton and of the mortgage company, as well as his attempts to defraud the IRS by including false memo notations on checks that he wrote in connection with the Columbia Road transactions. See Sentencing Order at 19–26. This total offense level (22), in connection with a criminal history level of I, produced a Guidelines range of 41–51 months; the court imposed a sentence of 46 months, plus a $25,000 fine. Smith now appeals both this sentence and his underlying conviction.

## II. ANALYSIS

### A. Smith's Conviction under 18 U.S.C. § 208(a)

 In pertinent part, the federal conflict-of-interest statute, 18 U.S.C. § 208(a), forbids any "officer or employee of the District of Columbia" from participating

> personally and substantially as a Government officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, in a . . . particular matter in which, to his knowledge, he, his spouse, minor child, general partner, organization in which he is serving as officer, director, trustee, general partner, or employee, or any person or organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest . . .

Smith argues that his conviction under this provision should be held invalid, as a mat-

ter of law, because he — a government worker paid only at the rate of GS–12 — could not have been an "officer or employee" who participated "personally and substantially" in the decisions that gave rise to his prosecution. His basis for advancing this interpretation is a provision in the D.C.Code that, in the name of avoiding conflicts of interest, requires any "public official" to make certain financial disclosures. *See* D.C.Code § 1–1461(i)(1). The linchpin of Smith's claim is that this requirement extends only to those officials paid at GS–13 or above. *Id.* at § 1462(a). Because he fails to meet this local law threshold, Smith asserts, he cannot be convicted under the analogous federal statute.

To state this argument is, in some sense, to refute it. In the first place, the operative term in 18 U.S.C. § 208(a) is not "public official," as it is in the D.C.Code, but rather "officer or employee." It is perfectly obvious, and Smith does not and indeed could not contest, that he was an "employee" of the District of Columbia when he served as MRDDA's Chief of Day Programs. Thus, the plain language of the statute, in which we find no ambiguity relevant here, sweeps Smith within its ambit. Moreover, even if there were some confusion over the scope of this text, it would make little sense for this court to interpret a term in the federal statute applicable here by reference to a different term in an unrelated nonfederal statute. This is especially so given that in 18 U.S.C. § 201(a)(1), which is a *related federal statute,* the phrase "officer or employee" is enlisted to help construe the very term, "public official," that Smith now urges this court to use to define "officer and employee." Smith has thus unpersuasively attempted to reverse the interpretive chain; in Title 18, "officer and employee" defines "public official," and not vice versa. Finally, § 208(a) was intended, and has generally been interpreted to have a broad reach,

to cover all that a commonsense reading of its language would suggest. *See United States v. Conlon,* 628 F.2d 150, 154–55 (D.C.Cir.1980). Smith's novel statutory construction argument must therefore be rejected, and his conviction affirmed.

### B. Smith's Base Offense Level

█ Smith's challenges to his sentencing stand on a different footing, however. We agree with Smith that the District Court committed plain error in determining the base offense level ("BOL") for his conspiracy conviction, a mistake that requires us to vacate and remand his sentence. When a defendant is convicted of conspiracy, the Sentencing Guidelines direct the court to apply the offense level that would have applied had that defendant been convicted of the substantive offense on which the conspiracy charge is based. *See* U.S.S.G. § 2X1.1. However, where a count charges a conspiracy to commit more than one offense, and where the guilty verdict does not establish which particular offense was actually the object of the conspiracy, the above Guideline may be applied *only* if "the court, were it sitting *as a trier of fact,* would convict the defendant of conspiring to commit that offense." U.S.S.G. § 1B1.2(d) & cmt. n.4 (emphasis added).

In this case, Smith's indictment listed both conflict of interest and the more serious gratuities offense as possible predicates for his conspiracy charge. The jury convicted Smith of the substantive conflict of interest violation, but hung on the gratuities counts. It did not specify on which of these offenses its conspiracy conviction was hinged. Subsequently, however, the trial court found that "the evidence proven by a preponderance at trial amply demonstrates that defendant conspired to commit the offense of Receipt of Illegal Gratuities and/or Payment of Illegal Gratuities." *See*

*Sentencing Order* at 4. Thus, although the jury, bound by a reasonable doubt standard, had deadlocked as to whether Smith had violated 18 U.S.C. § 201(c), the trial court judge, relying on a far more relaxed evidentiary standard, concluded that Smith had at least conspired to do so, and sentenced him accordingly.

The District Court's use of a preponderance standard to make this finding was undoubtedly erroneous. The phrase "sitting as a trier of fact" in the Commentary to § 1B1.2(d) clearly contemplates that when a court sets the basis for a conspiracy conviction, it will do so under a heightened burden of proof. Both the Sentencing Commission and the courts that have considered this issue have held that the appropriate standard is *beyond a reasonable doubt*. *See* U.S.S.G. app. C, amend. 75; *United States v. Conley*, 92 F.3d 157, 162 n. 4 (3d Cir.1996); *United States v. McKinley*, 995 F.2d 1020, 1026 (11th Cir. 1993); *United States v. Macklin*, 927 F.2d 1272, 1280 (2d Cir.1991). We agree. This, however, does not settle the issue before us.

The central question that we face is not what the evidentiary standard should be, but whether the District Court's failure to use the proper standard amounts to reversible error. The Government claims that Smith did not object on the burden of proof issue at sentencing, and thus that our review can only be for plain error. Smith counters that in fact he did preserve the issue, and that a harmless error standard is therefore appropriate. We need not resolve whether Smith offered a timely objection, because we conclude that the court's error was plain.

 To prevail on an unpreserved issue, a criminal defendant must establish that the error is "plain or obvious under current law, affects substantial rights, and seriously affects the fairness, integrity, or

public reputation of judicial proceedings." *United States v. Fields*, 251 F.3d 1041, 1045 (D.C.Cir.2001) (internal quotations omitted). In other words, Smith bears the burden of proving plainness, prejudice, and public harm. *See United States v. Olano*, 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Gartmon*, 146 F.3d 1015, 1024 (D.C.Cir.1998). Here, the Government has conceded that the trial court's error was plain. *See* Br. for Appellee 18. Moreover, we have no trouble concluding that a misapplication of the burden of proof that results in a defendant serving a longer sentence adversely affects the fairness and integrity of the judicial proceeding. *See United States v. Jordan*, 256 F.3d 922, 932 (9th Cir.2001) ("But, where, as here, the district court applied the wrong standard of proof, we must necessarily conclude that the fairness and integrity of the proceeding is threatened."); *cf. Tippett v. Maryland*, 436 F.2d 1153, 1166 (4th Cir.1971) (Sobeloff, J., concurring in part) ("The standard of proof is more than an empty semantic exercise; it reflects the value society places on individual liberty.").

The only remaining question is whether Smith suffered "prejudice" as a result of the court's error; in other words, whether he has demonstrated that his sentence might likely have been different had the court used the correct standard of proof. In answering this question, it is significant that the error occurred during sentencing. For, while the plain error analysis applies to mistakes committed during trial, this court has held that "the burden of persuasion in showing 'prejudice' should be somewhat lighter in the sentencing context." *United States v. Saro*, 24 F.3d 283, 288 (D.C.Cir.1994). That is, while the defendant in such cases must still "show a reasonable likelihood that the sentencing court's obvious errors affected his sen-

tence," we are more willing to infer such a causal relationship when the consequence is not that a conviction is overturned, but rather that a sentence is vacated. *Id.* at 287–88. Guided by this principle, we conclude that Smith has indeed met his burden.

As an initial matter, there is little doubt that had the District Court used the conflict of interest violation, instead of the illegal gratuities offense, as the predicate for Smith's conspiracy conviction, the resulting sentence would have been less than the 46 months that he actually received. This is so not only because the BOL for the former is less, but also because a number of the enhancements that the court used to augment Smith's offense level (based on the number and value of the gratuities involved) are not available under the conflict of interest guideline. *Compare* U.S.S.G. § 2C1.3 (conflicts) *with* § 2C1.2 (gratuities). As such, the length of Smith's sentence depended on his being "convicted" by the court of conspiring to violate 18 U.S.C. § 201(c). *Cf.* U.S.S.G. app. C, amend. 75 (noting that when the jury does not specify which offenses were the object of the conspiracy, a court's § 1B1.2(d) finding creates "what is, in effect, a new count of conviction"). And, because we find that it is reasonably likely that Smith would not have been similarly convicted under a reasonable doubt standard, it follows that the court's use of a more lenient standard of proof was prejudicial.

We reach this conclusion for several reasons. First, we are mindful of the significant difference between a preponderance standard and a reasonable doubt standard. "Although the phrases 'preponderance of the evidence' and 'proof beyond a reasonable doubt' are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). Indeed, the reasonable doubt standard requires the fact-finder to enter "a subjective state of near certitude of the guilt of the accused." *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A preponderance standard, in sharp contrast, requires merely that the fact-finder believe that the existence of a fact is more probable than the non-existence of that fact. *See* Neil Orloff & Jery Stedinger, *A Framework for Evaluating the Preponderance-of-the-Evidence Standard,* 131 U. PENN. L.REV. 1159, 1159 (1983); *see also United States v. Fatico,* 458 F.Supp. 388, 403–04 (E.D.N.Y.1978) (Weinstein, J.). Whereas a reasonable doubt standard is designed to "exclude as nearly as possible the likelihood of an erroneous judgment" against a criminal defendant, a preponderance standard compels the litigants to "share the risk of error in roughly equal fashion." *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). For this reason, the Supreme Court has indicated that a trial judge's improper jury instruction regarding the necessity of proof beyond a reasonable doubt can never be harmless error. *See Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). "Thus, a defendant whose guilt was actually proved by overwhelming evidence would be denied due process if the jury was instructed that he could be found guilty on a mere preponderance of the evidence." *Jackson,* 443 U.S. at 320 n. 14, 99 S.Ct. 2781 (internal citations omitted).

This case raises a similar concern. Here, the District Court, in effect, erroneously instructed itself that it could "convict" Smith of conspiring to violate 18

U.S.C. § 201(c) based on a finding to that effect by a mere preponderance of the evidence. Given (1) the substantial difference between the standard that the trial court used and the proper standard, (2) the due process concerns associated with convicting and sentencing criminal defendants under the appropriate burdens of proof, (3) the difficulties of determining whether an erroneous burden of proof was outcome determinative, *see Carvalho v. Raybestos–Manhattan, Inc.,* 794 F.2d 454, 455 (9th Cir.1986), and (4) our greater willingness to find prejudice in the context of sentencing errors, we find that Smith has satisfied his burden of proof. One of our sister circuits has reached the same result in like circumstances. Indeed, *United States v. Farese,* 248 F.3d 1056 (11th Cir.2001), presented a similar situation to the one that now confronts us: a sentencing court that had failed to use a reasonable doubt standard to fix the unspecified predicate offense for a conspiracy conviction. The Eleventh Circuit reversed, holding that the "district court's failure to apply the proper standard of proof at sentencing compels us to vacate the appellants' sentences and remand this case to the district court for resentencing." *Id.* at 1061; *see also United States v. Nguyen,* 255 F.3d 1335, 1341–42 (11th Cir. 2001) (vacating sentences imposed under a RICO conspiracy conviction where court determined unspecified predicate offense under a preponderance standard, and where that determination increased defendants' offense levels); *United States v. Ross,* 131 F.3d 970, 994 (11th Cir.1997) (vacating sentence imposed under U.S.S.G. § 1B1.2(d) where district court "did not state that it had determined that the evidence was sufficient to persuade it beyond a reasonable doubt" that defendants had conspired to commit a particular substantive offense).

Apart from misconstruing the burden of proof, the trial court determined that Smith conspired to commit an offense with respect to which the jury failed to convict. Normally, this would not be noteworthy, because it is settled that conspiracy and the substantive offense underlying a conspiracy are treated as separate and distinct crimes; indeed, a defendant can be convicted of the former while simultaneously acquitted of the latter. *See Iannelli v. United States,* 420 U.S. 770, 777–78, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *United States v. Hernandez,* 141 F.3d 1042, 1052–53 (11th Cir.1998). In this case, however, the result is anomalous. The discrepancy here between the actions of judge and jury is most readily explained in one of two ways: (1) the difference between conspiracy crimes and substantive crimes or (2) the difference in the burdens of proof applied with respect to each. None of the District Court's pronouncements give any reason to credit the former explanation.

In its *Sentencing Order,* the trial court announced that its task under U.S.S.G. § 1B1.2(d) was "to make a finding as to whether the evidence proven at trial establishes the object offense of Receipt of Illegal Gratuities and/or Payment of Illegal Gratuities." *Sentencing Order* at 4. True to its stated intention, the trial court's analysis fails to address the "*sine qua non* of the statutory crime of conspiracy," *i.e.,* the existence of an agreement to commit an illegal act, *United States v. Wilson,* 160 F.3d 732, 737 (D.C.Cir.1998). Rather, the District Court focuses instead solely on the evidence suggesting that Smith engaged in the object acts that would render him criminally liable under 18 U.S.C. § 201(c) itself. *See Sentencing Order* at 4–13. Moreover, at Smith's sentencing hearing, the trial court opined that the defendant "did, in fact, take gratuities by taking these monies and the loans, and charging

the interest rates that [he] did while [he was] in a position over the contracting." Tr. 12/12/2000 at 15. These statements suggest that the District Court's determination was based not on the technical differences between the elements of the federal conspiracy statute and the federal gratuities statute, but rather on its conclusion that Smith had in fact violated the latter. As such, in light of the jury's inability to reach a similar conclusion based on a reasonable doubt instruction, it is at least reasonably likely that the court would not have done so had it employed the same (and the proper) standard of proof.

A final reason to think that the District Court's burden of proof error was prejudicial lies in the court's treatment of the elements of § 201(c). The Supreme Court has recently made clear that, in order to obtain a conviction under this statute, the Government "must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given." *United States v. Sun–Diamond Growers of Cal.*, 526 U.S. 398, 414, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). While the District Court here did identify Smith's official acts and the things of value that he received, it never attempted to articulate or to "prove a link" between the two. The court's bare assertion that Braxtonbrown–Smith "undertook to enrich Smith and bestow reciprocal benefits on him" in acknowledgment of his referrals to PDA, *Sentencing Order* at 7, is not sufficient to satisfy a reasonable doubt standard. This court is simply not empowered to comb the record on its own to make a determination that the District Court should have, but did not, make under a significantly heightened evidentiary burden that the District Court should have, but did not, use. *See Jordan*, 256 F.3d at 933 (remanding where district court used a preponderance standard for a sentencing determination that should have

been governed by clear and convincing evidence; the Court of Appeals declared that "we are not in a position to weigh conflicting evidence, which is an important responsibility of the district court"); *cf. Hernandez*, 141 F.3d at 1052 ("It is emphatically not within the province of an appellate court to reweigh the evidence and the credibility of the witnesses at trial.").

In sum, then, we hold that the court's use of a preponderance standard to reach a conclusion that should have been determined beyond a reasonable doubt was prejudicial. Accordingly, Smith's sentence must be vacated and the case remanded so that the District Court may recalculate his offense level under the proper standard of proof.

### C. The Upward Departure

Smith also challenges the District Court's decision to impose a three-level upward departure under U.S.S.G. § 5K2.0. This departure elevated Smith's total offense level from 19 to 22; without such an increase, Smith's 46–month sentence would have been impermissible. Applying the familiar "heartland" analysis of *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the court held that the defendant's "commission of other crimes on persons or entities in the course of committing the offenses of conviction" justified a departure. *Sentencing Order* at 22. These purported "crimes," for which Smith was never charged, included: (1) Smith's alleged efforts to defraud the IRS by using false memo notations (indicating business-related expenses) on checks that he wrote in connection with the Columbia Road transactions; (2) Smith's alleged defrauding of Earnestine Keaton by purchasing her house at a reduced price after she had been told that she did not need a lawyer; (3) Smith's alleged attempts to

commit bank fraud by helping Terry Reid submit a false mortgage application.

■ Smith mounts three principal attacks on this departure. First, he argues that none of these alleged frauds were sufficiently related to the crimes for which he was actually convicted. Second, he asserts that no record evidence supports the finding that Smith committed either the tax fraud or the fraud on Ms. Keaton. Finally, and relatedly, he contends that, even assuming a departure was warranted, the court erred in determining the extent of that departure.

■ The first contention can be disposed of quickly. It is true that while a sentencing court is not limited by the definition of "relevant conduct" in U.S.S.G. § 1B1.3 in considering a § 5K2.0 departure, a court may not depart based on "acts bearing no relationship to the offense of conviction." *United States v. Kim,* 896 F.2d 678, 684 (2d Cir.1990); *see also United States v. Cross,* 121 F.3d 234, 240 (6th Cir.1997) (citing cases). In other words, the conduct forming the basis for the departure must be descriptively or logically, and not merely temporally, connected to the crime for which the defendant was actually convicted. *See United States v. Baird,* 109 F.3d 856, 864–65 (3d Cir.1997). Here, however, the frauds on the bank and on Ms. Keaton were certainly connected to Smith's conflict of interest crime in this relevant sense, as both of these facilitated and made more lucrative the purchase of the Columbia Road property, the improper transaction that ultimately led to Smith's conviction. While the tax fraud is perhaps more tangential, the evidence suggests that Smith used the checks on which he included the false memo notations to purchase the cashier's check with which he made his initial payment to Ms. Keaton in December of 1994. *See* Tr. 5/9/2000 at 128–30; 5/10/2000 at 152–55. That these

deceptions may have allowed Smith to conceal his involvement in the Columbia Road transaction, *see* Memorandum and Order at 6 (D.D.C. Dec. 12, 2000) ("Sentencing Reconsideration Order"), *reprinted in* J.A. tab 11, is relationship enough to allow them to be considered for purposes of a § 5K2.0 departure. *See United States v. Burns,* 893 F.2d 1343, 1346 (D.C.Cir.1990), *rev'd on other grounds,* 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

Smith's next two arguments, however, are more compelling. To see why, we must begin with the method by which the District Court calculated its departure. The trial court treated each of the three alleged frauds as separate crimes and inquired how Smith would have been sentenced, pursuant to the "grouping" rules of U.S.S.G. § 3D, had he been convicted of all three. Under this approach, the alleged loan fraud resulted in an offense level of 12, which was composed of a BOL of 6, *see* U.S.S.G. § 2F1.1, plus two-level enhancements for planning, for role in the organization, and for perjury. The alleged fraud on Ms. Keaton resulted in a level of 15, also starting with a BOL of 6, with a three-level enhancement for the amount of the fraud (more than $10,000), and two-level increases for planning, role in the offense, and because Ms. Keaton was deemed a vulnerable victim. Finally, the alleged tax fraud produced an offense level of 8, based on a BOL of 6, *see* U.S.S.G. § 2T1.1(a)(2), and a two-level perjury enhancement. *Sentencing Order* at 24–25; *Sentencing Reconsideration Order* at 7–9. Still proceeding as if Smith had been convicted of these offenses, the trial court then turned to U.S.S.G. § 3D1.4, which is used to determine a defendant's "combined offense level." Under this rule, one unit is assigned for the group with the highest offense level (here, Smith's already problematic conspiracy sentence, to which the

court had assigned a level 19). Another unit was added for Smith's "conviction" for defrauding Ms. Keaton, as the hypothetical offense level of that offense was one to four levels less serious than that of the conspiracy conviction. *See* U.S.S.G. § 3D1.4(a). Finally, another half unit came from the alleged loan fraud offense, as its offense level was five to eight levels less serious. *See* U.S.S.G. § 3D1.4(b). And under the grouping rules, two-and-a-half units translates to three levels; accordingly, the court departed by that degree. *See Sentencing Order* at 25.

In the abstract, this sentencing methodology is permissible, because it helps provide a set of standards to guide what otherwise could become a rather arbitrary decision. *See United States v. Molina,* 952 F.2d 514, 521 (D.C.Cir.1992) ("A district court's responsibility to respect the Guidelines' underlying policies of uniformity and proportionality in sentencing does not end when the court departs from the sentencing grid; indeed, that responsibility becomes more weighty because it is unguided departures that pose the greatest danger of undermining sentencing uniformity."); *cf. United States v. Cash,* 983 F.2d 558, 561 (4th Cir.1992) (suggesting that district courts may determine the proper extent of a departure "by extrapolating from the existing sentencing table"). However, a sentencing court's methodology is only as good as its inputs; if the findings supporting the multiple-conviction analogy were inadequate, then so too is the analogy.

■ In this case, the District Court's presumed analogy results in Smith being sentenced *exactly as if* he had actually been convicted of two counts of fraud, *i.e.,* offenses that were not among the charges against him. While it is well-settled that uncharged conduct, and even acquitted conduct, can serve as the basis for a sentencing determination (including a depar-

ture) under the Guidelines, *see* U.S.S.G. § 1B1.3, cmt. background; *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (conduct for which defendant was acquitted may be considered); *United States v. Arce,* 118 F.3d 335, 340–41 (5th Cir.1997) (conduct need not be criminal); *Baird,* 109 F.3d at 870 (conduct underlying dismissed counts is permissible), it is equally well-settled that in order to satisfy due process such conduct must be proven by a least a preponderance of the evidence, *see* U.S.S.G. § 6A1.3, cmt. background; *Watts,* 519 U.S. at 157, 117 S.Ct. 633; *United States v. Gigante,* 94 F.3d 53, 56 (2d Cir.1996); *United States v. Mahaffey,* 53 F.3d 128, 133 (6th Cir.1995); *United States v. Wilson,* 900 F.2d 1350, 1354 (9th Cir.1990). Thus, the District Court's analogy could not provide a "reasoned basis" for determining the extent of a departure, *Molina,* 952 F.2d at 522, unless the purported "convictions," and the corresponding enhancements, were supported by a preponderance of the evidence. Applying the "clearly erroneous" standard under which we review the factual findings of a sentencing court, *see United States v. Bridges,* 175 F.3d 1062, 1065 (D.C.Cir. 1999), we reject the trial court's findings because with the benefit of the full record we have reached "a definite and firm conviction" that the analogy underlying the sentences is not supported by the greater weight of the evidence. *See United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ First, Smith could not have been convicted of tax evasion, under any standard of proof. The elements of that crime are (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion. *See Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *United States v. Plitman,* 194 F.3d 59, 65 (2d Cir.1999).

Even if the false memo notations could be construed to satisfy the first and third elements, there is absolutely no indication in the record of any tax deficiency. The Government presented no evidence that Smith ever took, or even tried to take, a deduction on the basis of those notations. While cross-examining Smith, the prosecutor raised the point briefly, but then dropped it after Smith denied the suggestion. *See* Tr. 5/10/2000 at 155. Second, the evidence does not support the conclusion that Smith defrauded Ms. Keaton. In finding that he had done so, the District Court focused on two facts: (1) Braxtonbrown–Smith told Keaton that she did not need a lawyer in connection with the sale of her property to Smith; (2) Smith prepared a real estate contract that was "utterly one-sided." *Sentencing Order* at 23. Even assuming, as the court did, that Braxtonbrown–Smith's statement was properly attributed to Smith on a theory of co-conspirator liability, *see Sentencing Reconsideration Order* at 4–5, we do not see how this could amount to a violation of any fraud statute. What we seem to have here is a contract with some irregular, buyer-friendly terms signed by a seller not represented by counsel. While it may be that the defendant and others took advantage of a vulnerable Ms. Keaton, it is not apparent, absent further evidence of deception and reliance, that this transaction could constitute a crime supporting an upward departure.

Finally, while the court's conclusions regarding Smith's loan fraud are well supported by the record, its decision to include a hypothetical two-level enhancement for perjury committed in connection with that offense, *see* U.S.S.G. § 3C1.1, cmt. n.4, is questionable. We are concerned that this finding may have confused lying to the bank, which Smith admitted doing, with lying to the court. On rehearing, the District Court should therefore reexamine whether Smith's testimony regarding the phony lease actually meets all of the elements of perjury. *See United States v. Dunnigan,* 507 U.S. 87, 94–95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (holding that a perjury enhancement is only appropriate where the sentencing court makes a finding that "encompasses all of the factual predicates for a finding of perjury," specifically that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony").

The problems we have identified regarding the alleged tax fraud and the alleged fraud on Ms. Keaton, along with our questions regarding this perjury enhancement, undermine the trial court's justification for the extent of its departure. It falls to the District Court on remand to reconsider both its decision to depart and the proper degree of any such departure under a viable methodology..

### III. CONCLUSION

For the reasons given above, we affirm Smith's conviction under 18 U.S.C. § 208(a), but vacate his sentence and remand the case for resentencing consistent with this opinion.