[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 2, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13043

_____

D. C. Docket No. 03-20272-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN CARLOS ELSO,
a.k.a. J.C. Elso,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 2, 2005)**

Before BARKETT and MARCUS, Circuit Judges, and GEORGE[*], District Judge.

BARKETT, Circuit Judge:

_____

[*]Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

Juan Carlos Elso appeals his conviction and sentence for money laundering and conspiracy, pursuant to 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii), and § 1956(h). A jury convicted Elso, an attorney, of engaging in a transaction involving drug proceeds knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the money, as well as conspiring to do so. He was also convicted of conspiring to engage in a financial transaction involving drug proceeds to avoid a federal transaction reporting requirement. Elso was sentenced to 121 months' imprisonment.[1]

At trial, the government presented testimony that Elso had become friends with Andy and Rudy Diaz, brothers who were importing cocaine. During their friendship, which began in 1994, Elso represented Rudy in a drug case in which charges were dropped in 2001. Andy Diaz testified that he paid Elso $50,000 for his legal services at that time, and paid Elso's investigator $7000, all in cash.

Elso's convictions under § 1956(a)(1)(B)(i)[2] and § 1956(h)[3] were based on

_____

[1]His sentence also included three years of supervised release and 200 hours of community service. In addition, he was ordered to forfeit the $266,800 seized from his car when he was arrested.

[2]Section 1956(a)(1)(B)(i) provides that:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–

\* \* \*

(B) knowing that the transaction is designed in whole or in part--

2

the events of November 15, 2001, when Elso retrieved $266,800 in drug money from Andy Diaz's home. According to testimony presented at trial, Andy Diaz arrived at Elso's office that day after having delivered almost $500,000 in drug proceeds to an undercover agent posing as a Colombian courier, and claimed he was being followed by law enforcement agents. He expressed concern that law enforcement agents would discover and seize more drug money that was hidden in a floor safe at his home. Elso told Andy he would take care of the situation. After moving Andy's truck in an effort to throw off the surveillance, Elso went to Andy's home, retrieved $266,800 in cash from the floor safe, loaded it into a briefcase which he put into his car trunk, and attempted to drive back to his law office. When law enforcement agents tried to stop his car, he refused to stop, continuing to try to evade the police until he was blocked by traffic. Agents impounded his car, obtained a search warrant, and seized the money they found in the trunk.

---

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

\* \* \*

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

[3]Section 1956(h) provides that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

The conviction under § 1956(h) for conspiracy to violate §1956(a)(1)(B)(ii)[4] was based on a 1999 wire transfer Elso performed for Elizabeth Garcia, the common-law wife of Wlberth Gaviria, another client Elso represented on drug charges. The government presented evidence that Garcia was given $200,000 in drug money to distribute for laundering. She was to divide the money into amounts less than $10,000 to avoid federal reporting requirements. Garcia brought $10,000 of that money to Elso, who deposited the money into his law firm's trust account, kept $200 as a commission, and wired the remaining $9800 to an account affiliated with Colombian drug suppliers. Elso did not file federally required reports in conjunction with this transaction.

On appeal, Elso raises several challenges to his convictions and sentence.

---

[4]Section 1956(a)(1)(B)(ii) provides that:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–

\* \* \*

(B) knowing that the transaction is designed in whole or in part–

\* \* \*

(ii) to avoid a transaction reporting requirement under State or Federal law,

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

We have carefully reviewed the record and considered Elso's arguments, and find

no reversible error. We address, however, Elso's main argument that his §

1956(a)(1)(B)(i) conviction for money laundering and his § 1956(h) conviction for

conspiracy relating to the events of November 15, 2001, should be vacated because

the district court denied his request that the jury be given the following jury

instruction:

> The Defendant . . . has stated his defense in response to the
> charge in Count IV that the $266,800 in his briefcase on November
> 15, 2001, was to be paid to him as an attorney's fee. He asserts that
> he earned the fee by his representation of Rodolfo Diaz in the 1989
> charges which had been dropped in April, 2001. The Defendant's
> defense is that this was to be an attorney fee payment and was lawful
> even if he had reason to know that the money was proceeds of some
> form of unlawful activity.
>     You must determine the Defendant's intent with regard to the
> receipt of the $266,800. If he did not intend to engage in a financial
> transaction which he knew was designed to conceal or disguise the
> nature, the location, the source, the ownership, or the control of the
> proceeds of specified unlawful activity, you must find him not guilty.

Elso argues that the court's refusal to give this instruction prevented him from

advancing what he refers to as the "affirmative defense" that the money he

removed from Andy Diaz's home represented an attorney's fee.[5]

There is no question that a defendant is entitled to a jury instruction that

conveys his theory of defense, "as long as it has some basis in the evidence and has

---

[5]We review a district court's refusal to give a requested jury instruction for abuse of
discretion. Maiz v. Virani, 253 F.3d 641, 657 (11th Cir. 2001).

legal support." *United States v. Nolan*, 223 F.3d 1311, 1313-14 (11th Cir. 2000).

Reversal is appropriate "when we are left with a substantial and ineradicable doubt

as to whether the jury was properly guided in its deliberations," *id.* at 1314, which

occurs "only if the rejected instruction was substantively correct, the actual charge

to the jury did not substantially cover the proposed instruction, and the failure to

give it substantially impaired the defendant's ability to present an effective

defense," *United States v. Zlatogur*, 271 F.3d 1025, 1030 (11th Cir. 2001) (quoting

*United States v. Orr*, 825 F.2d 1537, 1542 (11th Cir. 1987)).

The essence of Elso's argument is that 18 U.S.C. § 1957(f),[6] which creates a

statutory exception to money laundering charges *brought under § 1957* for certain

attorney's fees, provides him with an affirmative defense to the charges he faced

under § 1956. Elso argues that the § 1957(f) exception "is designed to preserve a

constitutional right – the Sixth Amendment right to counsel," and is therefore

"highly relevant to a § 1956 defense in which the 'transaction' is claimed to be an

attorney's fee." We cannot accept Elso's characterization of § 1957(f) as an

affirmative defense to charges brought under § 1956.

---

[6]A defendant can be convicted under § 1957 for knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 derived from specified unlawful activity. However, subsection 1957(f) exempts from the definition of "monetary transaction" "any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution."

In order to convict Elso under § 1956(a)(1)(B)(i), the government had to prove, among other things, that Elso knowingly intended to engage in a "transaction [that was] designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."[7] As Elso conceded at oral argument, this provision would be violated even if the drug money involved in the "transaction" was an attorney's fee, as long as the government proved all the elements of § 1956, including the requirement that the defendant knew that the transaction was designed to conceal the nature, location, source, ownership, or control of those funds. It is true that § 1957 exempts the receipt of certain attorney's fees from the

_____

[7]Elso also argues that there was no "transaction" for the purposes of the statute because he merely transported the money, without transferring or delivering it to a third party. We reject this argument, finding that there is no requirement that goods be transferred to a third party to constitute a "transaction." According to § 1956(c)(3), the term "transaction" includes: "a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition . . . ." We find that Elso's actions of retrieving Andy's money from a safe in Andy's home, placing it in his car, and driving away constituted a transfer, and therefore qualified as a "transaction" under the plain language of the statute.

We also reject Elso's argument that there was no evidence of concealment because he was not trying to conceal the illegal nature of the funds. It is sufficient that he concealed the location of the drug money. See United States v. Farese, 248 F.3d 1056, 1060 (11th Cir. 2001) (finding that the concealment requirement in § 1956(a)(3)(B), which is set out in language identical to that in § 1956, was satisfied when the defendant exchanged large bills for small bills but did nothing else to conceal the illegal nature of the money, as the exchange "facilitate[d] concealment of the 'location' of funds because one large-denomination bill is easier to hide than several small-denomination bills of the same total value"). The record includes overwhelming evidence that Elso knew that "the transaction [was] designed in whole or in part to conceal or disguise the . . . location . . . of the proceeds of [drug activity]," as required by § 1956(a)(1)(B)(i).

7

conduct criminalized in § 1957.  However, it does not follow that this exemption

carries over into § 1956.  The issue of whether the money involved in this

transaction was for an attorney's fee is not relevant to the question of whether Elso

had the requisite knowledge and intent to support a conviction under § 1956

because even if the transaction involved attorney's fees, it cannot defeat a

conviction for § 1956 if he knew and intended that the transaction was designed to

conceal or disguise the nature, the location, the source, the ownership, or the

control of the proceeds of specified unlawful activity.

Moreover, the essential aspect of the instruction requested by Elso was

covered by the other jury instructions.  Elso wished the jury to be instructed that

he claimed that the $266,800 in his briefcase was an attorney's fee[8]; that if they

found it to be an attorneys fee, it would not be illegal even if he had reason to

know that the money was proceeds of some form of unlawful activity; and that he

could not be found guilty if he did not know that the transaction was designed to

conceal or disguise the nature, the location, the source, the ownership, or the

control of the proceeds of specified unlawful activity.  The point of this instruction

was that if he knew that the transaction was designed to conceal or disguise the

---

[8]Because we resolve this argument on grounds of level relevancy, we need not address the government's assertion that the evidence was insufficient to show that the funds at issue were ever intended to be a legal fee.

nature, location, source, ownership, or control of the proceeds of specified unlawful activity, he could be convicted of the crime charged.

The district court, however, clearly instructed the jury on the elements of § 1956, including the requirement that the defendant acted with knowledge that the transaction was designed to conceal the proceeds of the cocaine business. The district court also instructed the jury that Elso could not be convicted unless the government established all of the elements of the crime beyond a reasonable doubt, and told the jury that "[t]he mere fact that a lawyer provides legal services to one or more members of the conspiracy does not, in and of itself, make the lawyer a member of the conspiracy." In addition, the court made the following statement in response to a question from the jury during deliberations:

> In determining whether the Defendant engaged in money laundering, you should consider that an attorney may lawfully receive money as fees for representing persons charged with crimes as long as he does not violate Title 18, United States Code, Section 1956(a)(1)(B)(i). The four facts that must be proved beyond a reasonable doubt to find that the Defendant violated § 1956(a)(1)(B)(i), as charged in Count 4, are listed at pages 10-11 of the Court's instruction to the jury. If you find that all four of these facts have been established beyond a reasonable doubt, then these instructions apply to attorneys' fees the same as to any other transaction.

The instructions given were clearly sufficient to enable Elso to argue in defense that he lacked the requisite intent for a conviction. Elso's proposed

9

instruction would simply have told the jury that they could not convict him if they determined that the government had not proven an element of the offense, namely, that he knew the transaction was designed to conceal some illicit aspect of the money he took from Diaz's house.  This much was already clear from the district court's instructions. As a result, Elso's ability to present an effective defense was not impaired by the court's rejection of his proposed instruction.

We similarly reject Elso's argument that the district court provided an insufficient answer to the question posed by the jury during deliberations. Although the court's response may not have been as direct as Elso would have liked, the court's reference to its previous instruction on the elements of the crime – which included the concealment element discussed above – and its reminder that all elements of the crime must be proven beyond a reasonable doubt were sufficient to convey to the jury that no defendant, whether or not he is an attorney, may be convicted under § 1956 unless the government proves he knew the transaction was designed to conceal the illicit nature of the money.  We therefore find no error in the court's response to the jury's question.

Having considered the record and arguments of counsel, Elso's convictions and sentence are hereby

**AFFIRMED.**

10