[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-12605
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 03-20272-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN CARLOS ELSO,
a.k.a. J.C. Elso,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 8, 2010)

Before TJOFLAT, BARKETT and FAY, Circuit Judges.

PER CURIAM:

In *United States v. Elso*, 422 F.3d 1305 (11th Cir. 2005), we affirmed Juan

Carlos Elso's convictions and the sentences he received for conspiracy to commit,

and for committing, money laundering.[1] Elso thereafter moved the district court,

---

[1] The *Elso* panel described the charges and the facts on which they were based thusly:

Juan Carlos Elso appeals his conviction and sentence for money laundering and conspiracy, pursuant to 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii), and § 1956(h). A jury convicted Elso, an attorney, of engaging in a transaction involving drug proceeds knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the money, as well as conspiring to do so. He was also convicted of conspiring to engage in a financial transaction involving drug proceeds to avoid a federal transaction reporting requirement. Elso was sentenced to 121 months' imprisonment.

At trial, the government presented testimony that Elso had become friends with Andy and Rudy Diaz, brothers who were importing cocaine. During their friendship, which began in 1994, Elso represented Rudy in a drug case in which charges were dropped in 2001. Andy Diaz testified that he paid Elso $50,000 for his legal services at that time, and paid Elso's investigator $7000, all in cash.

Elso's convictions under § 1956(a)(1)(B)(i) FN2 and § 1956(h) were based on the events of November 15, 2001, when Elso retrieved $266,800 in drug money from Andy Diaz's home. According to testimony presented at trial, Andy Diaz arrived at Elso's office that day after having delivered almost $500,000 in drug proceeds to an undercover agent posing as a Colombian courier, and claimed he was being followed by law enforcement agents. He expressed concern that law enforcement agents would discover and seize more drug money that was hidden in a floor safe at his home. Elso told Andy he would take care of the situation. After moving Andy's truck in an effort to throw off the surveillance, Elso went to Andy's home, retrieved $266,800 in cash from the floor safe, loaded it into a briefcase which he put into his car trunk, and attempted to drive back to his law office. When law enforcement agents tried to stop his car, he refused to stop, continuing to try to evade the police until he was blocked by traffic. Agents impounded his car, obtained a search warrant, and seized the money they found in the trunk.

The conviction under § 1956(h) for conspiracy to violate § 1956(a)(1)(B)(ii) was based on a 1999 wire transfer Elso performed for Elizabeth Garcia, the common-law wife of Wlberth Gaviria, another client Elso represented on drug charges. The government presented evidence that Garcia was given $200,000 in drug money to distribute for laundering. She was to divide the money into amounts less than $10,000 to avoid federal reporting requirements. Garcia brought $10,000 of that money to Elso, who deposited the money into his law firm's trust account, kept $200 as a commission, and wired the remaining $9800 to an account affiliated with Colombian drug suppliers. Elso did not file federally required reports in conjunction with this transaction. *Elso*, 422 F.3d at 1307-08 (footnotes omitted).

pursuant to Federal Rule of Criminal Procedure 33(b)(1) for a new trial based on newly discovered evidence. The district court denied his motion. He now appeals the ruling, arguing that the district court abused its discretion in denying his motion because newly discovered evidence showed that (A) the district judge should have recused because she had prior knowledge of disputed evidentiary matters and was biased against him; (B) the Government failed to disclose exculpatory evidence in violation of the *Brady* rule[2] and the court failed to conduct an evidentiary hearing regarding the violation; and (C) the prosecution knowingly used and relied on perjured testimony.

We review for abuse of discretion a district court's denial of a motion for a new trial based on newly discovered evidence for an abuse of discretion. *United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002) (reviewing the district court's refusal to grant a new trial based on alleged violations of *Brady* and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)), or the court's denial of an evidentiary hearing on such motion. *United States v. Massey*, 89 F.3d 1433, 1443 (11th Cir. 1996).

Rule 33 provides that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

---

[2] *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (quotation omitted). The movant's "[f]ailure to meet any one of these elements will defeat" the motion. *United States v. Starrett*, 55 F.3d 1525, 1554 (11th Cir. 1995). Unsubstantiated allegations and accusations will not suffice to establish these elements. *See United States v. Calderon*, 127 F.3d 1314, 1354-55 (11th Cir. 1997) (affirming the denial of a motion for a new trial because the allegations of impropriety were supported only by appellants "self-serving affidavits" and were "totally unsubstantiated by any objectively credible source").

When the resolution of a motion for a new trial is clear, the district court is not required to hold an evidentiary hearing. *Jernigan*, 341 F.3d at 1289. Moreover, "the acumen gained by a trial judge over the course of the proceedings" makes the same court "well qualified" to rule on the motion without holding an evidentiary hearing. *United States v. Schlei*, 122 F.3d 944, 994 (11th Cir. 1997) (quotations omitted). With these principles in mind, we turn to Elso's arguments.

4

## A.

Elso generally contends that his newly discovered evidence of the district judge's impartiality and bias required the granting of a new trial. He states that, pursuant to a motion filed in a prior unrelated case, the judge obtained extrajudicial information that maligned him and, moreover, concerned disputed evidentiary facts. As a result, the judge's bias against him was reasonably brought into question and the judge should have recused.

> With respect to allegations of judicial bias, 28 U.S.C. § 144 provides:
>
> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein
> . . . .

28 U.S.C. § 144. Accordingly, properly pleaded facts in a § 144 affidavit must be accepted as true. To warrant recusal, however, a movant must allege facts that would convince a reasonable person that bias actually exists. *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000).

> Section 455(a) provides, in relevant part:
>
> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455. Under § 455(a), recusal is appropriate only if "an objective,

5

disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir.2003) (quotation omitted). The standard for determining whether a judge's conduct violated § 455(a) is an objective standard and independent of whether the judge was actually conscious of the circumstances creating an appearance of impartiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850, 108 S.Ct. 2194, 2197, 100 L.Ed.2d 855 (1988). Subsection 455(b)(1) "provides that a judge also shall disqualify himself where . . . he actually 'has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.'" *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007) (quoting 28 U.S.C. § 455(b)(1)).

Elso failed to establish that he lacked knowledge of the evidence underlying his claim of judicial bias at the time of trial or that recusal was warranted. In short, the judge did not abuse her discretion in denying his motion for new trial on that basis.

B.

Elso next argues that newly discovered evidence established that the Government withheld exculpatory information, which was material and favorable

to him. He states that the Government omitted from debriefing reports exculpatory statements of two witnesses, both of whom refused his pretrial requests for interviews and invoked their Fifth Amendment privilege against self-incrimination at trial. In an affidavit he attached to his motion for reconsideration of the court's order denying his motion for new trial,[3] Elso asserted that both witnesses are now willing to provide exculpatory testimony.[4] It is undisputed that Elso relied on the Government's reports concerning its debriefings of these witnesses during trial, attempted to have their statements admitted at trial, and asked the court to grant them judicial immunity or, alternatively, order the Government to give them immunity so they could provide exculpatory testimony. Elso further alleges that his due diligence in seeking to have the statements admitted at trial was undermined by the prosecutorial misconduct, and that such misconduct warranted an evidentiary hearing.

Under *Brady*, "the prosecution is required to disclose to the defense evidence favorable to the accused if the evidence is material to guilt or punishment." *Starrett*, 55 F.3d at 1555. "The United States Supreme Court has

---

[3] Elso's motion for reconsideration is not at issue in this appeal because he has advanced no argument with respect to the district court's order denying the motion. *See United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998) (stating that when a defendant fails to offer argument on an issue, it is abandoned).

[4] The affidavit is the only evidence Elso presented in support of his claim.

held that impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *Id.* (quotation, alteration, and ellipsis omitted). To obtain a new trial based on a *Brady* violation,

> the defendant must show that (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

*Vallejo*, 297 F.3d at 1164. "[N]ewly-available, exculpatory testimony of a codefendant is not considered newly discovered evidence sufficient to grant a Rule 33 motion unless it satisfies [the] five-part test" articulated in *Vallejo*. *United States v. DiBernardo*, 880 F.2d 1216, 1224-25 (11th Cir. 1989) (where defendants were "well aware" of witness' proposed testimony before trial, "the testimony cannot be deemed 'newly discovered evidence' within the meaning of Rule 33").

The district court did not abuse its discretion by denying Elso's motion for new trial based on the alleged *Brady* violation because Elso failed to demonstrate that he could not have possessed the evidence underlying his claim with reasonable diligence. Moreover, the court did not abuse its discretion in denying the motion without conducting an evidentiary hearing because the resolution of the *Brady* claim was clear, and Elso failed to offer any objective evidence in

8

support of the claim.

C.

Elso's final argument is that the prosecution knowingly relied on false testimony at trial in violation of *Giglio*. Elso states that the proffered testimony at issue was false because it was inconsistent with evidence at trial and conflicts with testimony that the two witnesses who invoked their Fifth Amendment privilege at trial are now willing to provide. For the first time in his reply brief, he argues that the district court abused its discretion in denying his motion for a new trial (based on newly discovered evidence of a *Giglio* violation) without conducting an evidentiary hearing.

In a specific application of the *Brady* rule, the defendant can establish a due process violation under *Giglio*, if he can show that (1) the prosecutor "knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony," and (2) there is a reasonable probability that the perjured testimony could have affected the judgment. *See Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (quotation omitted) (habeas context). *See Ventura v. Att'y. Gen.*, Fla., 419 F.3d 1269, 1277 (11 Cir. 2005) (noting that "the origins of the *Giglio* doctrine" stemmed from the Supreme Court's decision in *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), which held that

9

the government's failure to correct false testimony by a state witness violated the defendant's due process rights). "To obtain a reversal on the grounds that the government relied on perjured testimony, the following must be shown: (1) the contested statements were actually false, (2) the statements were material, and (3) the prosecution knew that they were false." *United States v. Baily*, 123 F.3d 1381, 1396 (11th Cir. 1997). The use of testimony that is inconsistent with a witness's prior testimony or that of a codefendant does not suffice to show that the proffered testimony was false. *Hays v. State of Ala.*, 85 F.3d 1492, 1499 (11th Cir. 1996); *United States v. Michael*, 17 F.3d 1383 (11th Cir. 1994). We do not consider arguments raised for the first time in a reply brief. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003).

The district court did not abuse its discretion in denying Elso's Rule 33(b)(1) motion based on the government's knowing use of false testimony because Elso failed to prove that the proffered testimony was false. Further, because he challenged the court's failure to hold an evidentiary hearing as to the alleged *Giglio* violation for the first time in his reply brief, the argument is abandoned, and we decline to consider it.

AFFIRMED.

10