[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14498

_____

D.C. Docket Nos. 1:10-cv-21345-PAS,
1:99-cr-00583-PAS-1

SALVADOR MAGLUTA,

Petitioner–Appellant,

versus

UNITED STATES OF AMERICA,

Respondent–Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 30, 2016)

Before WILSON and JULIE CARNES, Circuit Judges, and MOORE,[*] District
Judge.

PER CURIAM:

_____

[*] Honorable William T. Moore, Jr., United States District Judge for the Southern District of
Georgia, sitting by designation.

Salvador Magluta was convicted of one count of conspiracy to commit money laundering and eight counts of money laundering. After two direct appeals, he filed a § 2255 motion to vacate, set aside, or correct sentence. The district court denied each of Magluta's claims but granted a certificate of appealability as to four claims, each of which is premised on the Supreme Court's decision in *Regalado Cuellar v. United States*, 553 U.S. 550 (2008). After reviewing the record and the parties' briefs, and having had the benefit of oral argument, we affirm.

## I.  BACKGROUND

A jury convicted Salvador Magluta of, among other crimes, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and eight counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Each of the eight substantive counts corresponded to one of eight checks Magluta paid to his criminal defense attorneys. The checks were drawn from an Israeli bank account in the fictitious name of "Leonard Friedman." The account funds represented drug proceeds that had been transferred from Miami to New York, and then from New York to Israel.

Magluta appealed his convictions and sentence. The Eleventh Circuit affirmed each of Magluta's convictions other than his conviction for Count 8 (obstruction of justice through juror bribery), which conviction this Court vacated.

2

*See United States v. Magluta*, 418 F.3d 1166, 1186 (11th Cir. 2005).  On remand, the district court resentenced Magluta on the remaining counts of conviction. Magluta appealed his new sentence, and we affirmed.  *See United States v. Magluta*, 313 Fed. App'x 201 (11th Cir. 2008) (per curiam).  The Supreme Court thereafter denied Magluta's petition for *certiorari*.  *See Magluta v. United States*, 556 U.S. 1207 (2009).

Magluta subsequently filed a counseled motion to vacate, set aside, or correct his sentence under 18 U.S.C. § 2255.  His motion contained 46 claims. The district court denied each claim but granted a certificate of appealability ("COA") with respect to four of the claims, each of which turns on the effect of the Supreme Court's decision in *Regalado Cuellar v. United States*, 553 U.S. 550 (2008).  Magluta now appeals the district court's denial of those four claims.

## II.  DISCUSSION

In reviewing a district court's denial of a § 2255 motion, "we review legal conclusions *de novo* and findings of fact for clear error."  *Mamone v. United States*, 559 F.3d 1209, 1210 (11th Cir. 2009) (per curiam).

## A. Claims Not Identified in the Certificate of Appealability

Magluta argues that the district court committed various procedural errors.[1]
However, these procedural issues do not appear in the COA and therefore are not
properly before us. *See Murray v. United States*, 145 F.3d 1249, 1250–51 (11th
Cir. 1998) (per curiam) ("[A]ppellate review is limited to the issues specified in
the COA."); *Zakrzewski v. McNeil*, 573 F.3d 1210, 1211 n.2 (11th Cir. 2009) (per
curiam) ("Petitioner contends that the district court abused its discretion by
finding facts without holding an evidentiary hearing.  We doubt an abuse
occurred, but we decline to examine the arguments because they are beyond the
scope of the COA.").

## B. Claims Identified in the Certificate of Appealability

Magluta also argues that we should reverse the district court's denial of the
four claims identified in his COA.  Those claims can be summarized as follows:

> **Claim 1(a)(2)**: Counts 2 and 34 through 41 of the indictment
> are constitutionally defective because the indictment fails to
> allege facts that, if established, would show that Magluta knew
> that the payments he made to his attorneys were intended to
> conceal the nature, location, source, ownership, or control of
> the drug proceeds, as required under *Cuellar*.
>
> **Claim 4**: In light of *Cuellar*, Magluta is actually innocent of
> Counts 2 and 34 through 41 because the payments at issue
> were made for the sole purpose of paying his attorneys, and not

---

[1]  Magluta asserts as procedural errors the district court's denial of his motion to amend his
§ 2255 motion, its denial of his request for an evidentiary hearing, and its undue deference to
the magistrate judge's report and recommendation.

to conceal the nature, location, source, ownership, or control of the drug proceeds used to fund the defense.

**Claim 8**: The Government's theory of the design-to-conceal element was improper under *Cuellar*. The district court did nothing to correct this erroneous theory and thereby violated Magluta's Fifth Amendment due process right and Sixth Amendment right to a jury trial.

**Claim 18**: Trial counsel provided ineffective assistance by failing to argue that the Government had not proven that Magluta knew that the attorney's fee payments were intended to conceal the relevant attributes of the drug proceeds, as required under *Cuellar*.

Each of the claims identified in the COA turns on the Supreme Court's decision in *Cuellar*. Accordingly, a review of that decision is in order. At the outset, we note that *Cuellar* involved a conviction for transporting funds derived from an unlawful activity knowing that the transportation was designed at least in part to conceal or disguise the nature or ownership of the proceeds, in violation of 18 U.S.C. § 1956(a)(2)(B)(i).[2] Magluta was convicted of transactional money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i),[3] which prohibits a person

---

[2] Subsection (a)(2) prohibits the transportation, or attempted transportation, of funds to or through some place outside the United States knowing that the funds involved in the transportation represent the proceeds of some form of unlawful activity and "knowing that such transportation . . . is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(B)(i). The transactional money laundering prong of the statute has the identical design-to-conceal element set forth in the transportational money laundering prong.

[3] The offense of transactional money laundering consists of four elements: "(1) knowingly conduct[ing] a 'financial transaction,' (2) which [the defendant] knew involved funds that were the proceeds of some form of unlawful activity, (3) where the funds involved in the financial

from conducting a financial transaction with funds derived from an unlawful activity knowing that the transaction was designed in part to conceal or disguise the nature or ownership of the proceeds.  The parties vigorously dispute whether *Cuellar*'s teachings apply in the transactional money laundering context, as here. Ultimately, we need not decide this question because assuming *arguendo* that *Cuellar* does apply, Magluta's claims still fail.

The question presented in *Cuellar* was whether evidence that the defendant had concealed drug money while transporting it from the United States to Mexico was sufficient to prove the element of the offense requiring that the defendant know that the transportation was designed to conceal the nature, location, or ownership of the unlawful proceeds.  The evidence showed that the defendant had been pulled over in Texas about 100 miles from the Mexico border.  The police discovered a hidden compartment in the trunk containing $81,000 in cash, bundled in plastic bags.  Animal hair was spread in the rear of the car, and although the defendant claimed that he had previously transported goats in the car, the officer observed that the compartment was too small to accommodate goats. There was also evidence that the compartment had been recently installed and that

transaction in fact were the proceeds of a 'specified unlawful activity,' and (4) that the defendant engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity."  *United States v. Tarkoff*, 242 F.3d 991, 994 (11th Cir. 2001).

6

it was deliberately concealed.  Furthermore, the defendant had lied about where he had been in the days prior to his arrest.  Finally, an Immigration and Customs Enforcement ("ICE") agent testified that drug-trafficking organizations typically bring money into Mexico for the purpose of paying the organization's higher-ups.

The Government argued that its evidence satisfied the statute's design-to-conceal element because "concealment during transportation . . . is circumstantial evidence that the ultimate purpose of the transportation—*i.e.*, its 'design'—is to conceal or disguise a listed attribute of the funds."  *Cuellar*, 553 U.S. at 562.  The Supreme Court disagreed, holding that "in this context, 'design' means purpose or plan; *i.e.*, the intended aim of the transportation."  *Id.* at 563.  Put differently, "*how* one moves . . . money is distinct from *why* one moves . . . money."  *Id.* at 566 (emphasis in original).  In *Cuellar*, the defendant moved the money in a concealed manner, but the Government had introduced no evidence that would allow the jury to infer that the defendant had moved the money *in order to* conceal its nature, location, source, ownership, or control.  *Id.* at 567–68.  With this background in mind, we proceed to address Magluta's arguments concerning the district court's dismissal of his *Cuellar*-related claims.

### 1.  Claim 4

We begin with Claim 4, in which Magluta argues that he is "actually innocent" of the charges in Count 2 (§ 1956(h) conspiracy count) and Counts 34

through 41 (§ 1956(h) substantive counts) in light of *Cuellar*. Essentially, Magluta argues that *Cuellar* clarified that secretly transferring drug proceeds is, on its own, insufficient to prove that the defendant knew that the transaction was designed to conceal the nature, source, or ownership of the underlying funds. Magluta contends that the evidence did not show anything other than a transaction conducted in a concealed manner and, accordingly, he is actually innocent of the money laundering offenses.

The district court denied Magluta's claim because, "even post-*Cuellar*, the jury still would have found Magluta guilty under Counts 34–41." On appeal, Magluta maintains that there was no intent to conceal any material attribute of the funds. According to Magluta, the *sole* purpose of the transactions was to pay his attorneys using an acceptable form of payment. The Government argues that it is debatable whether freestanding actual innocence claims are allowable, but even if they are, Magluta has not met the extraordinarily high threshold necessary to press such a claim here.

The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390,

404–05 (1993)).[4]  On at least one occasion, the Supreme Court assumed, "for the sake of argument . . . , that in a *capital* case a truly persuasive demonstration of 'actual innocence' made after trial would render the *execution* of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."  *Herrera*, 506 U.S. at 417 (emphasis added).  Even assuming that a freestanding actual innocence claim is cognizable in the present non-capital case and even if *Cuellar* applies to transactional money laundering, Magluta has not demonstrated his actual innocence.

At bottom, *Cuellar* teaches that the Government cannot use the mere fact of transportation of tainted funds to prove a design to conceal the source, nature, or owner of those funds.  *See Cuellar*, 553 U.S. at 568 (holding that the design-to-conceal element "can[not] . . . be satisfied solely by evidence that a defendant concealed the funds during their transport").  The defendant in *Cuellar* was a low-level courier who was caught with $81,000 in cash in the trunk of the car he was driving toward the Mexico border.  According to testimony from an ICE agent, drug-trafficking organizations' couriers typically transported cash to Mexico to

---

[4]  Moreover, "[t]he Supreme Court . . . has never decided what the precise burden of proof for a freestanding actual innocence claim would be."  *Mize v. Hall*, 532 F.3d 1184, 1195 (11th Cir. 2008).  But we know that the standard would be *more* stringent than the standard that applies when a § 2255 petitioner argues that he is actually innocent in order to overcome procedural default.  In such cases, the standard is whether the § 2255 petitioner has shown that "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995) (internal quotation marks and citation omitted)).

pay the higher-ups. The Supreme Court held that the evidence did not show that the defendant knew that the transportation was designed to conceal some material attribute of the money being transported. *Id.*

The facts of this case are materially different from the facts of *Cuellar*. Here, the evidence at trial showed that Richard Passapera, one of Magluta's associates, delivered $1.2 million in drug proceeds to Antonio Garcia, another Magluta associate, in Miami. *Magluta*, 418 F.3d at 1175. Passapera and Magluta were unaware, however, that Garcia had become an FBI informant. *Id.* Garcia delivered the money to FBI agents, who transported it to New York and returned it to Garcia to complete the transaction. *Id.* In New York, Garcia turned the money over to two other Magluta associates, Harry Kozlik and Isaac Benatar. *Id.* With the cash in hand, Kozlik boarded a plane to Israel. There, he deposited the cash into an Israeli bank account under the fictitious name of "Leonard Friedman." *Id.* Kozlik later gave Garcia eight blank checks issued from the Friedman account. *Id.* Garcia then transferred the checks to Passapera. *Id.* Magluta used those checks to pay his lawyers. *Id.*

The district court rightly concluded that, based on these facts, "a jury could [] assume that how the money was moved had everything to do with why the money was moved." The fictitious name on the checks, in addition to the drug proceeds' path from Miami to New York to Israel and then *back to Miami*, would

10

permit the jury to infer that Magluta's intent in paying his attorneys was at least in part to cover up the fact that the payments derived from Magluta's drug proceeds; that is, to conceal the source or owner of the funds.

Magluta's argument on appeal bolsters our conclusion that a jury could infer based on the evidence in this case that the transactions were designed in part to conceal some material attribute of the underlying funds. Magluta maintains that the funds had to be transferred from Miami to New York to Israel because this was the only way for him to pay his lawyers by check, as they had requested.[5] But Magluta does not explain why he could not have paid his attorneys using checks tied to a bank account in the United States or an account in a legitimate name. Thus, unlike in *Cuellar*, the facts established at trial in this case permit the inference that the funds were transferred, at least in part, to conceal the drug proceeds' nature, source, or ownership. *See Cuellar*, 553 U.S. at 569 (Alito, J., concurring); *United States v. Faulkenberry*, 614 F.3d 573, 586 (6th Cir. 2010) ("[D]epending on context, proof that a transaction was structured to conceal a listed attribute of the funds can yield an inference that concealment was a purpose of the transaction."); *United States v. Slagg*, 651 F.3d 832, 845 (8th Cir. 2011) ("[T]he Government must show that concealment is *an* 'intended aim' of the transaction, whether from direct evidence or circumstantial evidence." (emphasis

---

[5] Secondarily, Magluta notes that he wanted the fact that he was paying criminal defense attorneys to be private.

added) (quoting *Cuellar*, 553 U.S. at 564)).  In sum, then, even if freestanding actual innocence claims are cognizable under § 2255, Magluta has fallen short of establishing his innocence.[6]

### 2.  Claim 18

In Claim 18, Magluta argues that he received ineffective assistance at trial because his attorney failed to argue to the jury that "Magluta's purpose in using checks to pay his attorneys was directly pertinent to the Government's burden to establish the designed concealment component of the charged money laundering offenses."  Essentially, Magluta contends that his attorney failed him by not making a *Cuellar*-like argument to the jury.  The district court dismissed Magluta's Claim 18 because "even if *Cuellar* is applicable to [] § 1956(a)(1)(B)(i), the [G]overnment presented enough evidence to sustain the conviction post-*Cuellar*."  Accordingly, Magluta cannot show prejudice from his attorney's failure to make a *Cuellar*-based argument.

Magluta's ineffective assistance claim "is governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)."  *Puiatti v. Sec'y, Fla. Dep't of Corr.*, 732 F.3d 1255, 1278 (11th Cir. 2013).  "Under *Strickland*, to establish constitutionally

---

[6]  To the extent Magluta argues that he is actually innocent based on 18 U.S.C. § 1957 because the payments at issue here were attorney's fees, his argument is foreclosed by Circuit precedent. *United States v. Elso*, 422 F.3d 1305, 1309–10 (11th Cir. 2005) (noting that § 1957's special treatment of attorney's fees does not carry over to the § 1956 context).

12

ineffective counsel, a defendant must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687). Magluta's claim focuses on the failure of his "*trial* attorney" to make an argument to the jury at *trial*. At the time of Magluta's trial, however, *Cuellar* had not yet been decided. So arguably, Magluta's trial lawyers were not ineffective by failing to advance a *Cuellar*-based argument. *See Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("[R]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." (internal quotation marks and citation omitted)).

We recognize that Magluta's trial counsel also represented him on direct appeal, and his final direct appeal was decided three days after *Cuellar* was handed down. But even if we assume that Magluta's attorney had the benefit of *Cuellar*, the attorney did not render deficient representation by failing to raise a *Cuellar* argument given that any such argument would have been futile in light of the evidence adduced at trial, as set out above. Thus, Magluta's lawyer's performance did not fall below objectively reasonable standards. *See Lindsey v. Smith*, 820 F.2d 1137, 1152 (11th Cir. 1987) ("A habeas petitioner who proposes [an] alternative trial strategy that would itself have proved futile has failed to demonstrate that the representation at trial fell below an objective standard of

13

reasonableness."). Moreover, because a *Cuellar*-based argument would have failed, Magluta has not carried his burden to show prejudice.

### 3. Claim 1(a)(2)

In Claim 1(a)(2), Magluta asserts that, in light of *Cuellar*, Counts 2 and 34 through 41 of the indictment "fail to specify facts sufficient to establish . . . a design to conceal."[7] The district court held that Claim 1(a)(2) was procedurally barred, but that even if it were not, Claim 1(a)(2) would fail on the merits.

Under the procedural default rule, a defendant generally must raise an available challenge to a conviction or sentence either before the district court or on direct appeal, "or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (per curiam). Magluta did not challenge the sufficiency of the indictment's allegation of the design-to-conceal element at trial or on direct appeal. In fact, he raised this issue for the first time in his § 2255 motion. Thus, Claim 1(a)(2) is procedurally barred unless Magluta demonstrates that one of two exceptions to the procedural default rule applies: (1) cause and prejudice, or (2) a miscarriage of

---

[7] Regarding alleged defects in the indictment, the COA is limited to the issue whether the indictment adequately alleges the design-to-conceal element in light of *Cuellar*. Thus, this Court is not empowered to address the following arguments raised in Magluta's brief: (1) "[t]he mere writing of checks" does not amount to a financial transaction within the meaning of § 1956; (2) the indictment does not state that the checks were written on different occasions, yet charges each check as a single count; and (3) the indictment does not set forth facts showing the effect of the transaction on interstate commerce.

justice, or actual innocence. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

Despite the district court's conclusion in its denial of Magluta's § 2255 motion that Magluta had procedurally defaulted Claim 1(a)(2), Magluta failed to address procedural default in his opening brief before us. In his reply brief, Magluta does suggest that his procedural default should be excused, but "[o]ur longstanding case law rule is that an appellant who does not raise an issue in his opening brief may not do so in his reply brief, in a supplemental brief, in a rehearing petition, or on a remand from the Supreme Court . . . ." *United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (en banc) (per curiam).

In any event, Magluta's arguments concerning procedural default fail. He asserts that his claims are not procedurally barred because (1) he is actually innocent in light of *Cuellar* and (2) he received ineffective assistance because his lawyer did not raise a *Cuellar*-like argument, and therefore he had cause for not raising a challenge to the indictment at an earlier juncture. We have already addressed Magluta's arguments concerning actual innocence and ineffective assistance, and we concluded that they are losing arguments. Although the standard for a so-called gateway actual innocence claim is lower than the standard for a freestanding actual innocence claim, Magluta cannot satisfy even the lower threshold.

15

To briefly recapitulate, Magluta argues that *Cuellar* narrowed the scope of the design-to-conceal element in § 1956(a)(1)(B)(i), and his conduct no longer satisfies that element of a money laundering offense.  But even accepting that *Cuellar* narrowed the scope of the design-to-conceal element, and even if *Cuellar* applies to transactional money laundering, Magluta would not be able to establish actual innocence in this case because he cannot show that "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327–28 (internal quotation marks and citation omitted)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) ("A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt.").  This is because, as explained above, the evidence adduced at trial would allow a jury to convict even after *Cuellar*.

Even if Magluta were able to overcome his procedural default as to Claim 1(a)(2), his argument that his indictment was constitutionally infirm fails on the merits.  "To pass constitutional muster, an indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecutions for the same offense."  *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983) (citing *Hamling v. United States,* 418

16

U.S. 87, 117 (1974)). "Those requirements are satisfied by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime." *Id.*

Here, the indictment tracked the language of the statute and also set forth facts allowing Magluta to ascertain the basis for the charges against him and plead double jeopardy in future cases for the same offenses. In relevant part, the indictment provided that Magluta:

> [D]id knowingly conduct, and attempt to conduct, and cause to be conducted, financial transactions affecting interstate and foreign commerce, that is, the writing of the checks described below, on an account at Israel General Bank Ltd., in the name of "Leonard Friedman," payable to the attorneys identified below, in the approximate amounts set forth below, such checks being subsequently transferred to the attorneys identified below, which financial transactions involved the proceeds of a specified unlawful activity, that is, the receiving, concealing, buying, selling, and otherwise dealing in a controlled substance, punishable under the laws of the United States, *knowing that the transactions were designed in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity*, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions as described below, represented the proceeds of some form of unlawful activity.

(emphasis added).

Following this paragraph, the indictment set forth a table detailing the particular payment that gave rise to each count. For each check/count, the table listed a payment date, a check number, the amount payed, the attorney involved,

17

and the property involved in the transaction. As such, the indictment passed constitutional muster. *See United States v. Sharpe*, 438 F.3d 1257, 1264 (11th Cir. 2006) (holding that the indictment was sufficient because "the counts contained all of the elements of the offenses charged and informed the defendants of the charges they faced").

### 4. Claim 8

In Claim 8, Magluta argues that the Government's case ran afoul of *Cuellar* by suggesting that the design-to-conceal element is satisfied by the mere fact of a concealed transaction. Magluta contends that the district court did nothing to correct this erroneous theory, and so the jury's conviction was in violation of Magluta's Fifth Amendment right to due process and Sixth Amendment right to a jury trial. The district court held that Claim 8 is procedurally defaulted because Magluta could have raised the claim on direct appeal but did not. Even if the claim was not procedurally defaulted, the district court held that it failed on the merits.

Magluta did not raise his argument concerning the Government's theory of prosecution and the district court's jury instructions during trial or on direct appeal.[8] Accordingly, Claim 8 is procedurally defaulted because neither default

---

[8] Magluta did challenge the sufficiency of the evidence supporting his substantive money laundering convictions in his first direct appeal. But Magluta's arguments on direct appeal were different than the argument he now advances. On direct appeal, Magluta first argued that

18

exception applies, for the same reasons provided above with respect to Claim 1(a)(2). But even if Magluta had not procedurally defaulted Claim 8, that claim would not provide a basis for relief. The Government elicited extensive testimony during trial showing that Magluta and his associates concocted a complicated scheme to funnel drug proceeds from Florida to New York to Israel to a fictitious bank account, and then to Magluta's attorneys. Again, a jury could infer based on this evidence that Magluta knew that a purpose of the payments was to conceal the nature, source, or ownership of the funds, and Magluta has not explained why such a complex scheme was necessary if his only goal was to pay his attorneys by check rather than cash. Whereas in *Cuellar* the evidence demonstrated that the funds were being transported to Mexico to pay higher-ups, here, the money was transferred in a roundabout way from Miami to Israel, only to come back to Miami. This, in combination with the fictitious name on the checks, distinguishes

---

"because the proceeds had been under the control of law enforcement before he used them to pay his lawyers, the money had lost its 'tainted' character and was no longer proceeds of a specified illegal activity." *Magluta*, 418 F.3d at 1175. Second, Magluta argued that "allowing actual drug proceeds [that] have been in the possession of the government to form the basis for a conviction . . . would make the money laundering 'sting' statute . . . superfluous." *Id.* at 1175–76. And third, "by the time he wrote the checks to his lawyers the money had already been laundered; therefore, he says, his acts amounted to mere spending for his personal benefit, not laundering." *Id.* at 1176. Magluta's third argument is related to but ultimately different from the *Cuellar* argument he now advances concerning the Government's theory of prosecution. In short, Magluta's argument now is not that the money was laundered before he paid his attorneys but rather that he lacked knowledge of a design to conceal some material attribute of the funds. But even if Magluta had previously raised the argument he now advances in Claim 8, thereby avoiding procedural default, Claim 8 would still fail on the merits, as we explain below.

the Government's theory concerning concealment in this case from the theory that the Supreme Court rejected in *Cuellar*.

In attacking the Government's theory of concealment, Magluta homes in on the Government's closing argument. But the unmistakable theme of the Government's closing argument was consistent with *Cuellar*. The prosecutor twice reminded the jury that Defendant could not be convicted simply for "[s]pending drug money." The prosecutor explained that, to the contrary, Defendant had been charged with "utilizing the proceeds from an unlawful activity to engage in certain financial transactions that affect interstate or foreign commerce *with the intent to conceal or disguise the location, source, ownership, [or] nature of the proceeds*." (emphasis added). The prosecutor reiterated that "[i]t is utilizing these tainted funds in a manner that hides its origins, hides its nature, its ownership, [or] the control of those funds" that is proscribed by § 1956(h)(a)(1)(B)(i). And he went on to catalogue the evidence suggesting that Magluta and his associates sought to conceal the source and owner of the drug proceeds. Thus, the prosecutors closing remarks clearly comport with *Cuellar*'s strictures.

Furthermore, the district court's jury instruction was clear that the design-to-conceal element required the Government to prove beyond a reasonable doubt "[t]hat [Magluta] engaged in the financial transaction knowing that the transaction

20

was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds of such specified unlawful activity." And the instructions stated that "[t]he statute does not make it an offense merely to conduct financial transactions with the proceeds of narcotics trafficking. The Government must also show that [Magluta] conducted the charged transaction with the intent to conceal the nature, location, source, ownership or control of the proceeds." Thus, there is no question that the district court's instructions were a correct statement of the law, even as set out in *Cuellar*.

## III.  CONCLUSION

The district court's denial of Magluta's § 2255 motion is **AFFIRMED**.